January 26, 1977

## 78-71  MEMORANDUM OPINION FOR THE DEPUTY COUNSEL TO THE PRESIDENT

### Presidential Transition Act (3 U.S.C. § 102 note)— Provision of Military Aircraft and Hospital Corpsman to a Former President (31 U.S.C. § 638)

You have orally asked for the opinion of this Office whether and under what circumstances the President might be able to make available to former President Ford military aircraft for his transportation and a medical corpsman to accompany him on such flights. Our response may be summarized as follows:

(1) The President may direct aircraft assigned to him to transport Mr. Ford on official transition business and may detail a medical corpsman to accompany him on such flights.

(2) The President may, on a one-time basis, direct an aircraft assigned to him to carry Mr. Ford on personal business or pleasure but may not detail a medical corpsman to that flight.

(3) With respect to the flights referred to in (2) the Department of Defense (DOD) may, at the request of the Director of the Secret Service, detail a military aircraft and a medical corpsman should the Director conclude that these are consistent with the statutory authority of the Secret Service to protect the former President.

The question you raise presents itself in at least two different contexts. The first context would involve travel by Mr. Ford where such travel can be shown to be related to the transition itself. In our view, such official travel would be at no expense to Mr. Ford. The Presidential Transition Act of 1963, Pub. L. No. 88-227, 78 Stat. 153, as amended, 3 U.S.C. § 102 note, provides that, for 6 months from the expiration of a President's term of office necessary services may be provided by the Administrator of General Services under § 4 of the Act to the former President, as provided by § 2, "to promote the orderly transfer of the executive power . . . ." Certainly travel of that nature would fall within the scope of these provisions. We are not aware that the Administrator has any authority to utilize a military aircraft for that purpose. But it is our view that the President can order such official travel by Mr. Ford to be accomplished in military aircraft. We have taken the position in the past that "in the absence of an expression of a contrary intent by Congress . . . the President must be

deemed authorized by the Constitution to utilize the troops and equipment under his command for reasonable purposes,even if they are not purely military in nature.'' Memorandum, April 14, 1975, at 2-3 (hereafter April 14 Memorandum). Thus, aircraft placed directly at the President's disposal, such as the aircraft of the military support group detailed to serve the President, can be used to transport Mr. Ford on transition business, without expense to Mr. Ford.

The second context in which your question might arise would involve situations in which former President Ford's movement is of a personal, rather than official, nature. In our view, as asserted in the April 14 Memorandum, *ibid.*, the President may direct aircraft placed at his command to be used for other than ''official purposes.'' This view is based on the authority contained in 31 U.S.C. § 638a(c)(2). That paragraph, which provides generally that Government aircraft may not be used other than ''exclusively for official purposes,'' specifically provides that ''the limitations of this paragraph shall not apply to any . . . aircraft for official use of the President . . . .'' Thus, an inference may be drawn that the President is empowered to devote aircraft assigned to him for other than ''official purposes.''

However, as the April 14 Memorandum also points out, under Department of Defense regulations, non-Government traffic is generally carried on a reimbursable basis by the person carried. Although certain exceptions to this general requirement are carved out, transport of former Presidents on personal business would not appear to fall within any of these exceptions. We believe that detailing a military aircraft on a regular—as opposed to a one-time—basis for non-Government purposes would both stretch the authority of the President as Commander-in-Chief and would not be justified by the inference drawn from 31 U.S.C. § 638a(c)(2). Furthermore, such travel on a nonreimbursable basis could create a tension between the President's authority and DOD regulations. Those regulations, while they may not technically foreclose such action, might create the appearance of impropriety.

It appears to us that the detailing of a medical corpsman stands upon the same footing. During the transition period, under his Commander-in-Chief powers, the detailing of a corpsman by the President to the former President can be accomplished if such detailing constitutes the provision of ''necessary services'' to further the transition under § 4 of the Act. For other purposes there would appear to be no authority for the detailing of a medical corpsman by the President. Unlike the President's use of military aircraft assigned to him, we are unaware of any statutory provision like 31 U.S.C. § 638a(c)(2) that would permit, by inference, the use of a medical corpsman to accompany the former President.

One possibility that we have had too little time to explore fully is the extent to which military aircraft and a medical corpsman might be detailed for Mr. Ford's use on personal business in connection with the Secret Service protection afforded to him. The protection of the Secret Service is extended to a former President during his lifetime, 18 U.S.C. § 3056. Section 2 of Pub. L. No. 90-331, 82 Stat. 170, as amended, 18 U.S.C. § 3056 note, provides that all

Federal departments must assist the Director of the Secret Service in carrying out those protective functions. It would therefore seem that a determination by the Director of the Secret Service that military aircraft should be used to transport former President Ford in order to facilitate Secret Service protection could furnish an adequate basis for the detail of available military aircraft to fly the former President. It is our understanding that the Secret Service has determined in the past that in some circumstances the use of military aircraft actually may reduce the overall cost of Secret Service protection as compared with providing the protection that would be required aboard a commercial aircraft. It may be that the Secret Service could apply the same reasoning with respect to the detailing of a medical corpsman.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*